Dear Mayor Cravins:
You advise this office that the employees and officers of the City of Opelousas are governed by a civil service system originally adopted under La.Const. Art. XIV § 15(D) (1921), which continues in existence under La.Const. Art. X § 14 (1974).[1] In 1962, the City of Opelousas Municipal Civil Service Board adopted rules and regulations governing personnel in the City Service, which provide for the examination, certification, and appointment of classified personnel. The rules further provide procedures for disciplinary actions, removals, demotions, and layoffs of classified personnel.
The City of Opelousas is also governed by the provisions of the Lawrason Act, La.R.S. 33:321, et seq. The Mayor in a Lawrason Act municipality is generally empowered by La.R.S. 33:404 to appoint and remove municipal employees, other than the employees of a police department with an elected chief of police. You suggest that the general authority to "appoint and remove" municipal employee granted to you by La.R.S. 33:404 in your capacity as Mayor should supersede any conflict in the civil service rules relative to disciplinary actions you take regarding municipal classified employees, and particularly, that you can proceed to discipline classified employees without the involvement or concurrence of the City's Board of Aldermen. *Page 2 
We first point out that the rules and regulations adopted by the City of Opelousas Municipal Civil Service Board have the effect of law pursuant to La.Const. Art. X § 10(A)(4). Further, La.R.S. 33:404(A)(3) specifically provides that a mayor's power to appoint and remove municipal employees is "subject to
applicable state law, ordinances, and civil service rules andregulations . . ." Accordingly, it is the opinion of this office that the civil service rules adopted by the City of Opelousas Municipal Civil Service Board would prevail over a conflicting interpretation of La.R.S. 33:404 in contravention to the disciplinary procedures set forth in those rules.
Considering the City's existing civil service rules and regulations, and in light of your status as Mayor of a municipality governed by the Lawrason Act, you ask this office to respond to the following questions: (1) can the Mayor of the City of Opelousas conduct a pre-disciplinary hearing concerning a classified municipal employee without the involvement of the Board of Aldermen; (2) if the Board of Aldermen is required to be present, must the Board vote to concur or not concur with the Mayor's action in the pre-disciplinary hearing; (3) may this pre-disciplinary hearing with the employee include the presence of the employee's immediate supervisor and/or the chief administrative officer of the City; (4) if the Board is not required to be present, is it necessary to advise the Board of the action taken in a pre-disciplinary hearing.
Our response to your questions requires review of specific provisions of the written rules and regulations adopted by the City of Opelousas Municipal Civil Service Board applicable to employees in the City's civil service system. Within the definitions provided in Rule I, the phrase appointing authority is defined to mean "the Mayor and Board of Aldermen of the City of Opelousas, Louisiana or its delegated authority to make appointments to positions in the agencies or departments included in the City Service." See
Rule 1(4).
Further, Rule VIII governs disciplinary actions, removals, demotions, and layoffs of employees in the City Service, and provides the following at Section 1(1.1):
 Maintaining Standards of Service
 When any regular employee in the classified service is unable or unwilling to perform the duties of his position in a satisfactory manner or has committed any act to the prejudice of the service, or has omitted to perform any act that it was his duty to perform or otherwise has become subject to corrective action, the Appointing Authority shall take action
warranted by the circumstances to maintain the standards of effective service. The action may extend to (1) removal from the service, (2) retirement, (3) reduction in pay of five percent (5%) of the employee's current rate of pay, (4) demotion to any position of a lower class that the employee is *Page 3 
deemed by the appointing authority and the director to be competent to fill, (5) suspension without pay not exceeding in the aggregate thirty (30) working days in a period of (12) consecutive calendar months, (6) fine, (7) reprimand or other less drastic measure of discipline which the Appointing Authority consider proper.
We pause here to mention that the term "pre-disciplinary hearing" in use in the City of Opelousas is somewhat confusing. This "pre-disciplinary hearing" is actually a disciplinary hearing conducted by the appointing authority, which is governed by Rule VIII quoted above. A classified employee of the City of Opelousas who is disciplined at such a hearing has the right of appeal to the City of Opelousas Municipal Civil Service Board concerning any disciplinary action taken against him by the appointing authority.See Rule II, Section 4(4.1) providing "regular employees in the classified service shall have the right to appeal to [the City of Opelousas Municipal Civil Service Board] from suspension, fine, dismissal, reduction in pay or demotion to test the reasonableness of such action."
The civil service rules cited above currently provide that the Mayor and the Board of Aldermen of the City of Opelousas are together the appointing authority. The civil service rules grant the appointing authority the ability to take corrective or disciplinary action against a municipal civil service employee, but do not grant the Mayor of the City of Opelousas the unilateral ability to discipline a classified employee. In other words, the Mayor of the City of Opelousas, acting alone and without the concurrence of the City's Board of Alderman, is without authority to discipline a civil service employee, given the current definition of appointing authority contained in the civil service rules.
However, we also point out that because the definition ofappointing authority contained in Rule 1(4) specifically contemplates that the appointing authority may delegate its power to make appointments in the classified service, it is our opinion that the appointing authority may also delegate certain disciplinary actions to the Mayor alone, or to an employee's supervisor, or other administrative official. Currently, in the absence of a resolution or ordinance by the Board of Aldermen reflecting such a delegation, disciplinary action by the appointing authority means such action must be taken by the Mayor and Board of Aldermen acting together as appointing authority. We also mention here that the City of Opelousas Municipal Civil Service Board could amend its rules and regulations to specifically designate the Mayor as appointing authority.
Turning to your first question, it is the opinion of this office that a pre-disciplinary hearing concerning a classified municipal employee requires the attendance of the City's Board of Aldermen. In response to your second question, it is the opinion of this office that the Board of Aldermen must concur with the *Page 4 
recommendation of the Mayor regarding the discipline imposed upon a classified employee. With respect to the functioning of the Mayor and the Board of Aldermen at the pre-disciplinary hearing, note that La.R.S. 33:404(A)(3)[2] states that in those instances where the concurrence of the Board of Aldermen is required, the mayor recommends and the board approves. Applying La.R.S. 33:404(A)(3) here, if there is no approval by the Board of Aldermen regarding the proposed disciplinary action, then no disciplinary action is taken against the classified employee. If there is a tie vote on the Board of Aldermen resulting in non-approval of the proposed disciplinary action, then "the recommendation of the mayor shall prevail" as provided by La.R.S. 33:404(A)(3).
Your third question asks if the employee's immediate supervisor and/or the chief administrative officer of the City may attend a classified employee's pre-disciplinary hearing. Please note that this pre-disciplinary hearing conducted by the Mayor and the Board of Aldermen is a public meeting, subject to the requirements of the Louisiana Open Meetings Law, La.R.S. 42:11, et seq.
La.R.S. 42:14(A) directs that "[e]very meeting of any public bodyshall be open to the public unless closed pursuant to R.S. 42:16, 17, or 18."
However, La.R.S. 42:17 permits a public body to go into executive session to discuss the "character, the professional competence, or physical or mental health" of a person, or for an investigative proceeding involving allegations of misconduct.[3] If the Mayor and Board of Aldermen intend to hold an executive session regarding a classified employee, the language of La.R.S. 42:17 requires that the individual whose character, professional competence, or physical or mental health is being discussed be notified in writing of the executive session discussion at least twenty-four hours before the meeting; the individual may request that such discussion be held at an open meeting. *Page 5 
Thus, our response to your third question is fact-sensitive: if the employee whose "character, professional competence, or physical or mental health" is being discussed by the Mayor and Board of Aldermen in an executive session does not request that the discussion be held at an open meeting, then the Mayor and the Board of Aldermen may exclude the employee's immediate supervisor and/or the City's chief administrative officer from the executive session. In the alternative, the Mayor and the Board of Aldermen can permit anyone whose presence is deemed necessary to participate in the executive session. Under La.R.S. 42:16, any action taken by the Mayor and Board of Aldermen must be taken in open session.[4]
Finally, our response to the first three questions makes it unnecessary to address your fourth question.
We hope the foregoing is helpful to you. Should you have other questions with which we may provide assistance, please contact this office.
 Very truly yours,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 BY:____________________ KERRY L KILPATRICK ASSISTANT ATTORNEY GENERAL
 KLK:arg
[1] The history of the civil service system operating in the City of Opelousas was extensively reviewed in La. Atty. Gen. Op. 09-0067.
[2] La.R.S. 33:404(A)(3) provides that "subject to applicable state law, ordinances, and civil service rules and regulations, to appoint and remove municipal employees, other than the employees of a police department with an elected chief of police. However, appointment or removal of a nonelected chief of police, the municipal clerk, the municipal attorney, or any department head shall be subject to approval by the board of aldermen, except that in the case of a tie vote, the recommendation of the mayor shall prevail. Furthermore, selection or removal of any person engaged by a municipality to conduct an examination, review, compilation, or audit of its books and accounts pursuant to R.S. 24:513 shall be subject to approval by the board of aldermen of that municipality."
[3] La.R.S. 42:17(A) (1 provides:
§ 17. Exceptions to open meetings
A. A public body may hold an executive session pursuant to R.S. 42:16 for one or more of the following reasons
(1) Discussion of the character, professional competence, or physical or mental health of a person, provided that such person is notified in writing at least twenty-four hours before the meeting and that such person may require that such discussion be held at an open meeting, and provided that nothing in this Subsection shall permit an executive session for discussion of the appointment of a person to a public body. In cases of extraordinary emergency, written notice to such person shall not be required; however, the public body shall give such notice as it deems appropriate and circumstances permit.
 ***
(4) Investigative proceedings regarding allegations of misconduct.
[4] La.R.S. 42:16 provides:
§ 16. Executive Sessions
A public body may hold executive sessions upon an affirmative vote, taken at an open meeting for which notice has been given pursuant to R.S. 42:19, of two-thirds of its constituent members present. An executive session shall be limited to matters allowed to be exempted from discussion at open meetings by R.S. 42:17; however, no final or binding action shall be taken during an executive session. The vote of each member on the question of holding such an executive session and the reason for holding such an executive session shall be recorded and entered into the minutes of the meeting. Nothing in this Section or R.S. 42:17 shall be construed to require that any meeting be closed to the public, nor shall any executive session be used as a subterfuge to defeat the purposes of this Chapter.